



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Paul E. Budlow*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*
*Paul.Budlow@usdoj.gov*

March 30, 2012

Bruce L. Marcus
MarcusBonsib, LLC
6411 Ivy Lane
Suite 116
Greenbelt, Maryland 20770

Re:   United States v. David Mitchell Rowe
      Criminal #: L-11-0376

Dear Mr. Marcus:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by April 6, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to plead guilty to the Indictment now pending against him, which charges him with Use of Interstate Facilities to Coerce a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422(b). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a.      First, that on or about June 20, 2011 through June 23, 2011, the

Defendant used a facility and means of interstate and foreign commerce;

b.     Second, that the Defendant used the interstate facility to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense.

## Penalties

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: life imprisonment followed by a five-year term of supervised release and a fine of $250,000. There is a mandatory minimum sentence of imprisonment of ten years. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.     The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.     If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to hisr immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

3

## Advisory Sentencing Guidelines Apply

6.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised.

## Factual and Advisory Guidelines Stipulation

7.     This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachments A and B hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.     Pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level is **28**.

b.     Pursuant to U.S.S.G. § 2G1.3(b)(3), the base offense level is increased by two levels because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of the minor to engage in prohibited sexual conduct. **Subtotal = 30.**

c.     Pursuant to U.S.S.G. §2G1.3(b)(4)(A), the base offense level is increased by two levels because the offense involved the commission of a sex act or sexual contact. **Subtotal = 32.**

d.     Pursuant to U.S.S.G. § 2G1.3(b)(5), the base offense level is increased by eight levels because §2G1.3(b)(4) applies and the offense involved a minor who had not attained the age of 12 years. **Subtotal = 40.**

e.     This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

f.     The resulting sentencing guidelines offense level is **37**.

4

8.    This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in will be raised or are in dispute.

<u>Obligations of the United States Attorney's Office</u>

9.    At the time of sentencing, this Office will recommend a sentence no higher than 180 months (15 years).

10.    This Office agrees that it will not make any proactive attempts to refer any information that it may have received during its investigation of this case to other prosecutorial or law enforcement agencies, be they federal or state offices, including but not limited to, the information regarding the Defendant's conduct with a minor in Texas. Specifically, this Office has, through the FBI in Beaumont, Texas, contacted the District Attorney's Office for Hardin County, Texas. The FBI was informed that the District Attorney's Office for Hardin County does not have an active file or investigation regarding the defendant and they are not contemplating opening an investigation.

11.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

<u>Waiver of Appeal</u>

12.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.    The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

     d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

<u>Obstruction or Other Violations of Law</u>

     13.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

<u>Forfeiture</u>

     14.     The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his person and vehicle on June 23, 2011 as described in Attachment A to this Plea Agreement. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

<u>Court Not a Party</u>

     15.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for

that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

<u>Entire Agreement</u>

16.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4-25-2012
_____
Date

David Mitchell Rowe
_____
David Mitchell Rowe

I am Mr. Rowe's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4/25/12
_____
Date

_____
Bruce Marcus, Esquire

7

## ATTACHMENT A-STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

The defendant, David Mitchell Rowe ("Rowe"), age 65, is a resident of Linthicum, Maryland.

In June of 2011, Rowe was a member of the swimming pool at the Embassy Suites located at 1300 Concourse Drive, Linthicum, Maryland. In early June 2011, Rowe befriended a 9-year old girl, Jane Doe 1, who was spending time at the pool with her parents, who were staying at the hotel. Over the course of a few days, Rowe played games in the pool with Jane Doe 1, and eventually began engaging physical contact with the girl. Rowe initially "wrestled" with Jane Doe 1, and later Rowe used his hand and touched Jane Doe's vagina, over her bathing suit. On one occasion, Rowe exposed his penis to Jane Doe while she was underwater.

On June 10, 2011, on the day that Jane Doe's family was scheduled to check out of the hotel, Rowe gave a small velvet bag to a lifeguard at the pool and asked the lifeguard to give the bag to Jane Doe 1. The lifeguard delivered the bag to Jane Doe 1's father. The bag contained a gold money clip with the name Dave engraved on it. The money clip was holding a folded picture of an Rowe. On the back of the photo the following information was handwritten:

David Rowe

Write, Call or Text please
Don't forget me. (smiley face)  Miss You

The contact information on the note is Rowe's accurate contact information.

Jane Doe 1's father alerted the hotel manager, who contacted law enforcement. Beginning on June 20, 2011, an undercover detective began a text message conversation with Rowe, assuming the identity of Jane Doe 1.[1] The initial text message was as follows: "Hi Mr.

---

[1] Attachment B to this plea agreement contains the text messages between Rowe and the undercover detective. The parties agree that content of Attachment B are the text messages between Rowe and the undercover detective. The first few test messages between Rowe and the detective are not reflected on Attachment B because the detective's cell phone only holds 200 messages.

Dave remember me from the pool". Rowe sent a reply which stated Jane Doe 1's name, indicating that he did remember. Rowe continued to communicate with the detective, believing that the detective was Jane Doe 1, through June 23, 2011. In the text messages, Rowe said society would not allow them to be a couple, and that he would end up in jail. Rowe also discussed how he touched Jane Doe 1, and that he knew she was 9 years old. Rowe also described in detail how Jane Doe 1 should masturbate, and further stated that he wanted to have sex with her and perform oral sex on her.

On June 22, 2011, Rowe agreed to meet with Jane Doe 1 the next day, June 23, 2011, at a restaurant in Baltimore County. The stated purpose of the meeting was for Rowe to perform oral sex on Jane Doe 1. On June 23, 2011, Rowe arrived at the restaurant parking lot and was placed under arrest. At the time of his arrest, Rowe had a Motorola Tracfone, model TFC139B, IMEI: 011148007584612, in his hand. This was the phone Rowe had been using to text message Jane Doe 1 (the detective). Rowe was driving a van, and the rear seats of the van were folded down, and a blanket and a pillow were spread out on the floor of the van.

Rowe later voluntarily agreed to be interviewed after being advised of, and waiving, his rights per *Miranda*. During the interview, Rowe admitted to all of the above described conduct regarding Jane Doe 1, and he stated that he believed that he had been texting with Jane Doe 1 over the prior few days. Rowe stated that he took the pillow and blanket from his house and set the van up in the morning in preparation for performing oral sex on Jane Doe 1. Rowe also disclosed that he is sexually aroused by girls between the ages of 9 to 11 years old.

During the interview, Rowe disclosed that he has touched other minor females for his sexual gratification, as detailed below:

Jane Doe 2 - Rowe stated that in the mid 1970s he molested an eleven year old girl who was visiting his house, and that he exposed himself to the girl. Rowe stated that he was "running around" with the girl, he then tickled her, and he penetrated her vagina with his finger. Jane Doe 2 was interviewed and confirmed that when she was a child, she spent time in Rowe's home, that Rowe exposed himself to her, and that on one occasion, while she was on a bed, Rowe got on the bed with her and fondled her.

Jane Doe 3 - Rowe also disclosed that he molested ████████████ in 2010, when she was 9 years old. Jane Doe 3 lives in ████ and Rowe was visiting Jane Doe 3's family in ████ when the abuse occurred. According to Rowe, ████████ was gathered in the living room watching television, and Jane Doe 3 was sitting on his lap, covered by a blanket. While Jane Doe 3 sat on his lap, Rowe touched Jane Doe 3's vagina. Rowe also admitted to touching Jane Doe 3 a second time, while the two of them were in the pool together. Rowe said that he touched Jane Doe 3's vagina, and that Jane Doe 3 later told him not to touch her there again. Jane Doe 3 was forensically interviewed and disclosed that she was sexually molested by Rowe.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_____  _____
Date                         David Mitchell Rowe